# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLORADO

Civil Action No. _____

BAYOU CITY BROADCASTING EVANSVILLE, INC., a Delaware Corporation,

    Plaintiff,

v.

DISH NETWORK L.L.C., a Colorado Limited Liability Company,

    Defendant.

## CIVIL COMPLAINT AND JURY DEMAND

COMES NOW, Bayou City Broadcasting Evansville, Inc, ("Bayou City" or "Plaintiff") by and through its undersigned attorney, Bruse Loyd of Jones, Gillaspia & Loyd LLP, and files this, its Complaint and Jury Demand against Defendant DISH Network, L.L.C. f/k/a EchoStar Satellite, L.L.C. ("DISH" or "Defendant"), and would show the Court as follows:

## I.   INTRODUCTION

1.   Plaintiff Bayou City is a small, local broadcasting company with one television station located in and serving Evansville, Indiana and the surrounding area and affiliated with the CBS and Fox television networks.  Defendant DISH is a national direct-broadcast satellite service providing satellite television, internet and related services.

2.   This case is a result of a dispute between Bayou City and DISH stemming from DISH's disingenuous and unauthorized attempt to prorate its payments for

retransmission fees owed to Bayou City and refusal to pay the actual amounts owed as per their confidential Retransmission Consent Agreements ("RCA").

3.  Bayou City sues for actual and exemplary damages, interest, reasonable attorney's fees and costs resulting from the intentional misconduct exhibited by DISH in breaching the parties' RCAs by shorting payments for retransmission owed to Bayou City. DISH unilaterally prorated the monthly Retransmission Fee owed to Bayou City under the RCAs, denying Bayou City significant revenues. The terms of the RCAs do not allow this and DISH knows it. This practice is deliberate and systemic within DISH despite a ruling by this Court, affirmed by the Tenth Circuit, prohibiting it. See *Gol TV Inc v EchoStar Satellite Corp.* 692 F.3d 1052, 1054 (10th Circuit 2012), attached hereto as Exhibit A.

4.  Based on DISH's cavalier attitude toward this Court's ruling, and obvious willingness to continue this practice, it is likely DISH is shorting other broadcasters and program suppliers across the United States in the same manner – betting their content providers will never discover DISH's fraud.

## II.   THE PARTIES

5.  Bayou City Broadcasting Evansville, Inc. is a Delaware corporation with its principal place of business in Evansville, Indiana.

6.  DISH Network, L.L.C. is a Colorado Limited Liability Company with its principal place of business located at 9601 South Meridian Boulevard, Englewood, CO 80112. It may be served through its registered agent for process by serving the complaint and summons on R. Stanton Dodge at 9601 South Meridian Boulevard, Englewood, CO 80112, or wherever he may be found.

### III.   VENUE AND JURISIDCTION

7.     This court has subject matter jurisdiction over this action because there is complete diversity between the Plaintiff and Defendant and the amount in controversy, exclusive of interest and costs, exceeds $75,000.

8.     This Court has personal jurisdiction over DISH which is a Colorado limited liability company with its principal place of business in Colorado.  In addition, it has consented to the jurisdiction of this court in Paragraph 21 of the Retransmission Consent Agreement entered into by the parties on February 2, 2015.

9.     Venue is appropriate under 28 U.S.C. § 1391 as Defendant "resides" in this district.

### IV.   FACTS

10.    January 1, 2015, Bayou City purchased WEVV from Nexstar Broadcasting, Inc., concurrently with Nexstar's purchase of substantially all of the stock of Communications Corporation of America, Inc. ("CCA"), the station's former owner. With that purchase, various contracts CCA had entered were assigned to and assumed by Bayou City.  One such contract was a 2009 RCA between CCA and EchoStar, now known as DISH.  This is the first of the two RCAs relevant to this lawsuit.  The 2009 RCA granted DISH the right to retransmit, among other programming, the primary (CBS) and multicast (FOX) signals of WEVV, in exchange for a monthly Retransmission Fee. On or about December 28, 2011 the first RCA was amended to extend the term of the contract to December 31, 2014.

11. Bayou City was in the process of acquiring WEVV and was assigned all the rights and duties under the first DISH RCA on December 31, 2014, at which time the parties extended that first RCA to January 7, 2015.

12. Through December 2014 and January 2015, DISH and Bayou City worked to negotiate a new RCA. The negotiations were contentious with DISH waging a public relations campaign in the Evansville, IN area, ironically accusing Bayou City of "stealing" from DISH's subscribers. Although DISH did not retransmit WEVV's programming from January 8, 2015 through February 1, 2015, the station's programming was at all times available free over the air to any viewer in the Evansville area.

13. Despite DISH's unethical, hardball tactics, on February 2, 2015, Bayou City and DISH entered a new RCA. This second agreement granted DISH the right to retransmit the signals of WEVV, including the station's Fox, CBS, and local programming, in exchange for the newly negotiated Retransmission Fee per subscriber. DISH immediately resumed retransmitting WEVV. Under both RCAs, Retransmission Fees were due and payable based on the number of DISH subscribers in each monthly "Reporting Period," measured from the 22nd day of one calendar month to the 21st day of the subsequent month.

14. Subsequently, DISH made a partial payment to Bayou City of the amount owed for the Reporting Period beginning December 22, 2014 and ending January 21, 2015 under the first RCA and a partial payment of the amount owed for the Reporting Period beginning January 22, 2015 and ending February 21, 2015, under the second RCA. However, the payments were far less than they should have been.

15. Upon further investigation, Bayou City discovered that DISH had unilaterally prorated the monthly per Subscriber Retransmission Fee owed to Bayou City under the RCAs, denying Bayou City much needed cash flow important to a growing business. There are no terms in the RCAs that allow DISH to obtain such a "double discount" by prorating its payments.

16. In calculating the Retransmission Fees due for the December-January Reporting Period and the January-February Reporting Period, DISH calculated the number of Subscribers for whom a Retransmission Fee was due by taking the number of Subscribers authorized to receive WEVV on the last day of the previous Reporting Period and the last day of the current Reporting Period and dividing by two. As permitted under the RCAs, for any such day on which WEVV's programming was not retransmitted by DISH, this number was calculated as zero. While this led to an artificially low average number of Subscribers for each Reporting Period, as the Tenth Circuit Court of Appeals recognized in the *Gol TV* decision cited above, this mechanism is included in DISH's RCAs for the purpose of accounting for situations where a station is retransmitted for only a portion of a Reporting Period. As that Court held, where a contract contains such an explicit mechanism, additional proration would be "harsh and unreasonable." *Id.*

17. This, however, is precisely what DISH has done. In addition to obtaining an artificially low number of average subscribers in this manner, however, DISH also unilaterally, and in violation of the RCAs, prorated its payments to Bayou City for the number of days in each Reporting Period that WEVV was retransmitted on DISH's system. Bayou City soon discovered DISH's practice of unilaterally prorating subscribers without contractual support is deliberate within DISH. As cited above, this

Court had entered an opinion, affirmed by the Tenth Circuit, prohibiting this conduct. *Id.* Regardless, DISH ignored the legal precedent it played a role in setting. Instead, DISH is betting that most, if not all, of the broadcasters it has/is defrauding would not discover the missing money, and if they did, would decline to seek redress in a distant federal court, (as required by the RCAs' venue clause) alerting the Court of DISH's contempt for that previous ruling.

18. DISH has refused to pay Bayou City the full Retransmission Fees due and owing for the period from December 2014 through February 2015. These Retransmission Fees are now past due under the terms of the RCA, and are now subject to the payment of interest.

19. In response to repeated written requests from Bayou City for payment, DISH has failed to give any reasonable assurance that payment will be forthcoming, and indeed has firmly refused to make any such payments. DISH has no excuse for its failure to pay the outstanding license fees. Bayou City has fully performed all of its obligations under both RCAs.

20. DISH has provided Bayou City no notice of default or breach of any term or provision of the parties' RCAs as justification for its non-payment, or in any other way demanded any curative acts from Bayou City as a precondition for payment under the RCA.

21. Accordingly, Bayou City seeks actual and exemplary damages for fraud, breach of contract and/or quantum meruit, as well as prejudgment interest, reasonable attorney's fees and costs awarded for DISH's schemes to avoid paying Bayou City what it is entitled to per the RCAs.

## FIRST CAUSE OF ACTION
## FRAUD

22. Bayou City incorporates herein by reference each and every allegation in the preceding paragraphs.

23. DISH made the affirmative, material representation to Bayou City that it was properly calculating the Retransmission Fees it owed Bayou City for the time frame in question.

24. DISH made the representation knowing full well it was false and that DISH was, in fact, using a method unsupported by any term of the RCA and prohibited by this Court to calculate the money it was going to pay Bayou City.

25. DISH made the representation intending to defraud Bayou City, Bayou City relied on that representation, and has been injured as a result.

26. As a result of DISH's fraud, Bayou City seeks damages, including but not limited to, actual and exemplary damages, pre-judgment interest on the unpaid balance, reasonable attorneys' fees and costs.

## SECOND CAUSE OF ACTION
## BREACH OF CONTRACT

27. Bayou City incorporates herein by reference each and every allegation in the preceding paragraphs.

28. Bayou City substantially performed its obligations under the parties' RCAs.

29. DISH breached its payment obligations under the parties' RCAs by failing to pay in full the Retransmission Fees for the period between December 2014 and February 2015.

30. Bayou City has been damaged by DISH's breach of its payment obligations.

31. As a result of DISH's breach, Bayou City seeks actual damages, pre-judgment interest on the unpaid balance, reasonable attorneys' fees and costs.

### THIRD CAUSE OF ACTION
### QUANTUM MERUIT

32. Bayou City incorporates herein by reference each and every allegation in the preceding paragraphs.

33. Bayou City rendered services to DISH by permitting it to retransmit WEVV's broadcast signal, including Fox, CBS, and local content, to its subscribers.

34. To the extent the Court determines that the parties' RCAs do not reflect a specific agreement for payment by DISH to Bayou City, Bayou City nevertheless provided its programming services to DISH with a reasonable expectation that it would be paid the reasonable market value for such.

35. DISH requested and accepted Bayou City's programing services knowing that Bayou City expected to be compensated for such services.

36. DISH has failed to pay the reasonable market value for Bayou City's programing services for the period from December 2014 to February 2015. Bayou City has been damaged by DISH's failure to pay.

37. As a result of DISH's receipt of services, Bayou City seeks actual damages, pre-judgment interest on the unpaid balance, reasonable attorneys' fees and costs.

## JURY DEMAND

38.     Plaintiff hereby demands a jury trial on all issues that can be submitted to a jury.

## PRAYER FOR RELIEF

Plaintiff prays that:

a.  Defendant be summoned to appear and answer herein;

b.  Plaintiff be granted judgment against Defendant for its damages, actual and exemplary;

c.  Plaintiff be granted judgment against Defendant for pre-judgment interest and post-judgment interest as allowed by the RCAs or, where otherwise applicable, at the maximum legal rate;

d.  Plaintiff be granted judgment against Defendant for reasonable attorneys' fees and costs of court;

e.  Plaintiff be granted such other and further relief, special or general, legal or equitable, as Plaintiff may show that it is justly entitled to receive.

Respectfully submitted,

JONES, GILLASPIA & LOYD, L.L.P.

/s/ Bruse Loyd
Bruse Loyd
Texas State Bar No. 24009032
4400 Post Oak Parkway Suite 2360
Houston, Texas 77027
TEL:  713.225.9000
FAX:  713.225.6126
bruse@jgl-law.com

ATTORNEY-IN-CHARGE FOR PLAINTIFF